*478 OPINION OF THE COURT
Lucy Billings, J.
I. Background
On March 20, 2009, petitioner Anthony Furina was working as a pier superintendent, overseeing the loading of freight onto the ship Asian Trust in Bayonne, New Jersey. On that day, officers of the Waterfront Commission of New York Harbor, Division of Police, staked out and observed petitioner drive two trucks onto the Asian Trust. The police officers then arrested petitioner for working as a longshoreman without being on the longshoremen’s register. After an administrative hearing, respondents revoked petitioner’s temporary pier superintendent permit and denied his application for a permanent pier superintendent permit, on the ground that his loading of the two trucks constituted an offense under the Waterfront Commission Compact (McKinney’s Uncons Laws of NY § 9827) that demonstrated his poor character and unfitness for the permits. (Verified answer, exhibits D at 2, E at 2.) Petitioner now seeks reversal of that determination. (CPLR 7803 [3], [4].)
After oral argument and careful review of the voluminous record, the court grants the petition for the reasons explained below. Respondents shall reinstate petitioner’s temporary pier superintendent license and grant his application for a permanent pier superintendent license. (CPLR 7806.) The order of July 19, 2010, by respondent Waterfront Commission of New York Harbor, and the Administrative Judge’s report and recommendation of June 17, 2010, on which respondent Waterfront Commission relied, were arbitrary and contrary to law. (CPLR 7803 [3].)
II. The Applicable Law
Petitioner admits driving two vehicles onto the ship Asian Trust while working as a pier superintendent and without being registered as a longshoreman. Respondents have not provided, nor has the court found, any statute or regulation forbidding a pier superintendent from minimal physical loading of freight as part of the superintendent’s supervisory responsibilities. The record from the agency hearing includes testimony that a longshoreman might have had a “problem” with petitioner’s loading of the two trucks (verified answer, exhibit B at 602), but a longshoreman’s simple disapproval does not equate to the force of a statute or regulation. Few activities or restraints from activity bother no one at all.
Respondents emphasize that a pier superintendent may not join a longshoremen’s union (Uncons Laws § 9818) and that a *479 pier superintendent is defined as distinct from a longshoreman. (Uncons Laws § 9806.) Respondents have not charged petitioner, however, with unlawful union membership. Without more, a prohibition on union membership by persons holding a particular job title does not translate into a prohibition on particular job duties or actions in furtherance of those duties or otherwise in the course of the job.
The Waterfront Commission Compact provides that “no person shall act as a longshoreman within the port of New York district unless at the time he is included in the longshoremen’s register.” (Uncons Laws § 9827.) The Compact does not define “act as a longshoreman.” Although loading freight is among the duties within the definition of a longshoreman (Uncons Laws § 9806), the inclusion of that duty there does not definitively exclude it from either the duties or the activities of a pier superintendent, nor transform any freight loading activity, however occasional or minimal, into “act[ing] as a longshoreman.” Supervision naturally and reasonably involves occasional assistance with a subordinate’s duties, to show a subordinate how to perform a task or because the subordinate is unable to perform it, for example.
To hold instead that to “act as a longshoreman” is to engage in any activity that overlaps to any extent with a longshoreman’s duties under section 9806 would render the necessary and inevitable duties of pier superintending inherently criminal, because the very definitions of a longshoreman and a pier superintendent include functions that overlap. The definition of a longshoreman includes a person employed “to supervise directly and immediately” other longshoremen. A pier superintendent, by comparison, means a “person other than a longshoreman . . . whose work . . . includes the supervision, directly or indirectly, of the work of longshoremen,” explicitly recognizing that the work of a longshoreman and of a pier superintendent do coincide. (Uncons Laws § 9806 [emphasis added].)
Concomitantly, the statutes and the Waterfront Commission rules and regulations recognize that the positions also entail distinct forms of employment. Waterfront Commission of New York Harbor Rules (21 NYCRR) § 4.2 (a) (5) requires that “any person” be registered as a longshoreman “who is employed by any person, other than by a carrier of freight by water or by a stevedore, to perform labor or services involving or incidental to the movement of freight.” This regulation does not apply to a pier superintendent because a pier superintendent is by definí *480 tion employed “by a carrier of freight by water or by a stevedore.” (Uncons Laws § 9806.) Otherwise, however, like the statute, Waterfront Commission Rules § 4.2 (a) (5) gives longshoremen and pier superintendents overlapping functions, because even a superintendent who stood completely still and imparted solely verbal instructions would “perform . . . services involving or incidental to the movement of freight.”
In sum, the statutes and regulations expressly provide for the parallel employment, with overlapping functions, of longshoremen and of pier superintendents not on the longshoremen’s registry. (E.g. Uncons Laws § 9806; Waterfront Commn Rules §§ 2.1, 4.2 [a] [5].) These laws therefore permit pier superintendents to “act as a longshoreman” insofar as those terms may be interpreted to include “services involving or incidental to the movement of freight” or other supervisory assistance with subordinate longshoremen’s duties. (Waterfront Commn Rules § 4.2 [a] [5].)
III. The Preclusive Effect of Related Litigation
Petitioner also instituted a claim in the United States District Court in New Jersey for false arrest and malicious prosecution. On August 25, 2011, that court granted summary judgment dismissing that action, partly because the arresting officers had probable cause to believe that Purina was committing the offense of acting as a longshoreman without being registered as a longshoreman. (NJ Stat Ann §§ 32:23-27, 32:23-67; Furina v Gonzalez, 2011 WL 3798719, *6, 2011 US Dist LEXIS 95253, *14-18 [D NJ, Aug. 25, 2011, No. 10-2043 (SRC)].)
The District of New Jersey decision does not preclude petitioner’s claims here. There is no identity between the issue of whether the officers had probable cause based on what they knew at the time of the arrest and the issue of whether respondents’ determination was arbitrary or contrary to law based on the evidentiary record available to respondents after a full hearing. (Orr v Yun, 95 AD3d 661, 662 [1st Dept 2012]; Springwell Nav. Corp. v Sanluis Corporacion, S.A., 81 AD3d 557, 558 [1st Dept 2011]; Sepulveda v Dayal, 70 AD3d 420, 421 [2010].) This court has examined a different basis of knowledge, available at a different time, under different circumstances, to different parties.
IV Conclusion
Petitioner’s loading of vehicles onto a ship March 20, 2009, did not constitute acting as a longshoreman within the meaning and in violation of the Waterfront Commission Compact *481 (Uncons Laws § 9827). Respondents have cited no other factor that disqualified petitioner from a pier superintendent license other than such a violation. Therefore the court grants the petition and orders respondents forthwith to reinstate petitioner’s temporary pier superintendent license and to grant his application for a permanent pier superintendent license. (CPLR §§ 7803 [3]; 7806.) This decision constitutes the court’s order and judgment granting the petition.